## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARQUIS MOSLEY,** | **:** | |
| **Petitioner** | **:** | **CIVIL ACTION NO. 3:15-0334** |
| **v.** | **:** | **(Judge Mannion)** |
| **Supt. ROBERT GILMORE,** | **:** | |
| **Respondent** | **:** | |

## MEMORANDUM

## I.   Background

Petitioner Marquis Mosley ("Mosley"), files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, seeking relief from the Judgment of Sentence entered on February 3, 2011, in Court of Common Pleas of Dauphin County, criminal case CP-22-CR-0002147-2010, following a jury conviction of second-degree murder, robbery and conspiracy to commit robbery.  (Doc. 1).

For the reasons set forth below, the petition for writ of habeas corpus, which is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), will be denied.

## II.   State Court Factual and Procedural Background

The following relevant facts and procedural history set forth below are extracted from the Superior Court of Pennsylvania's January 16, 2014 decision affirming the denial of Mosely's petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§9541-9546:

> In our disposition of Appellant's direct appeal, we summarized the facts of Appellant's case as follows:
>
>> During the evening hours of March 24, 2010, Shirley Ragland expressed her financial woes to Appellant and to her best friend, Lakesha Jefferies. Notes of Testimony, Jury Trial, 1/31/2011-2/3/2011, at 254-55 (hereinafter N.T.). Together, they hatched a plan to rob an individual named Qahill Jefferson. Mr. Jefferson was known to have money and had scheduled a visit with Ms. Ragland later than night. N.T. at 257, 259. When Mr. Jefferson arrived, he went upstairs and fell asleep on Ms. Ragland's bed. Appellant, Ms. Jefferies, and a man named Khyrell Smith went upstairs. Appellant, who was wielding a black handgun, demanded that Mr. Jefferson get up. N.T. at 277-79. Within two seconds of this demand, the gun fired, leaving Mr. Jefferson dead. N.T. at 277-82.
>
> **Commonwealth v. Mosley**, No. 517 MDA 2011, unpublished memorandum at 2 (Pa. Super. filed February 3, 2012)(footnote omitted).
>
> Based on these facts, a jury convicted Appellant of second-degree murder, robbery and conspiracy to commit robbery. On February 3, 2011, he was sentenced to an aggregate term of life imprisonment. Appellant timely appealed and, after this Court affirmed his judgment of sentence, our Supreme Court denied his subsequent petition for allowance of appeal. **Commonwealth v. Mosley**, 46 A.3d 805 (Pa. Super 2012)

2

(unpublished memorandum), *appeal denied*, 48 A.3d 1248 (Pa. 2012).

Appellant filed a timely *pro se* PCRA petition and counsel was appointed. After counsel filed a supplemental petition on Appellant's behalf, the PCRA court conducted a hearing. On May 2, 2013, the court issued an order denying Appellant's petition. He filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Herein, he raises one issue for our review:

> A. Did the PCRA court commit an error of law when it denied [Appellant's] amended petition for post-conviction relief because trial counsel's failure to lodge a timely objection rendered her *per se* ineffective under the standards expounded by **Commonwealth v. Pierce**[, 786 A.2d 203 (Pa. 2001), *abrogated by* **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002),] and its progeny?

Appellant's Brief at 5.

Appellant's claim of ineffectiveness centers on trial counsel's failure to timely object to what Appellant contends was an improper supplemental jury instruction. The at-issue instruction was provided by the court in response to a question posed by the jury foreperson. On direct appeal, Appellant raised a similar claim, couched in terms of trial court error rather than counsel's ineffectiveness.

(Doc. 15-2, <u>Commonwealth of Pennsylvania v. Mosley</u>, No. 901 MDA 2013, unpublished memorandum at 1-3 (Pa. Super. filed Jan. 16, 2014).

On January 16, 2014, the Superior Court, finding that the PCRA court did not err in rejecting Appellant's ineffectiveness claim, affirmed the PCRA court's denial of the petition. *Id.*

Thereafter, on February 17, 2015, Mosley filed the instant timely petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. In his petition, Mosley raises a single claim of Ineffective Assistance of Counsel.  (Doc. 1).

## III.    Legal Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973).  28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Mosley's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## IV.    Discussion

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen, 563 U.S. at 181 (internal quotation marks and citation omitted). The burden is on Mosley to prove entitlement to the writ. Id.

Under 28 U.S.C. §2254(d)(1), a decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in

[Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The test for §2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under §2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75–76 (quoting Williams, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

The test for §2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," §2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record.  See Rice v. Collins, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' ") (quoting §2254(e)(1)) (citing Miller–El v. Dretke, 545 U.S. 231, 240, (2005)).  Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).

Petitioner's sole claim that trial counsel was ineffective for failing to promptly and adequately object to the state trial court's reinstruction to the

jury has been fully adjudicated on the merits during the state court proceedings.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." See id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the petitioner must show that he was prejudiced by the deficient performance.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th

Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in Strickland "qualifies as 'clearly established Federal law' " for purposes of the AEDPA. See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 391 (2000)). Therefore, under §2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland or are based on an unreasonable determination of the facts. See Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, see Commonwealth v Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to Strickland, see Jacobs, 395 F.3d at 107 n.9.

Petitioner contends that the Superior Court's approval of the trial court's erroneous and prejudicial supplemental instruction or reinstruction

10

constitutes "an unreasonable application" of existing law for at least three reasons: first, the trial judge failed to correctly respond to the jury's question; second, the trial judge then recharged the jury on second-degree murder only, to the exclusion of the lesser degrees of homicide applicable, thereby wrongly emphasizing it and virtually directing that eventual verdict; and third, it failed to correctly issue supplemental instructions or reinstruct the jury when (belatedly) requested by defense counsel before receiving the jury's verdict. (Doc. 25 at 31-32). Petitioner concludes that as a matter of fact and of law, he was prejudiced by defense counsel's failure to timely, repeatedly and adequately object to the Court's response to the jury's question and to its supplemental instruction/reinstruction. Id.

The Pennsylvania Superior Court affirmed the PCRA Court's rejection of Petitioner's claim, finding the following:

> We explained Appellant's challenge to the court's supplemental jury instruction as follows:
>
>> Shortly after retiring to deliberate, the jury returned with the following question. "If the jury determines guilt on a robbery count, are we then only limited to a second degree murder charge?" N.T. at 611. The jury foreman sought to clarify the question and added "[a]re we – because second degree murder is a felony murder, if we determine a felony occurred, are we therefore, only limited to determining second degree murder?" N.T. at 612.
>
> The trial court, in response, offered the following instruction:

11

[Well, maybe. Let me respond the way I should.] My instructions in terms of how you deal with the verdict is that you start at the top and work your way down particularly in that first count of homicide.

Second degree is the most serious, then third. So you have – counsel, I'm going to give you an opportunity to tell me if you think I don't do this correctly. You must consider each of them under the homicide charge separately but clearly there is a relationship, but first you consider the second degree felony murder is a murder connected with the commission of a felony. In fact, it's the Commonwealth's burden to prove that the Defendant or in this case partner, accomplice, coconspirator killed Mr. Jefferson.

Secondly, that the Defendant or the partner did so while committing or attempting to commit a – in this case robbery is the crime alleged; and, third that the Defendant was acting with malice, and you can find that he was acting with malice or his partner if you're satisfied beyond a reasonable doubt that he or the partner committed or attempted to commit the felony, the robbery.

Robbery is a crime inherently dangerous to human life, and therefore, there need not be any other proof of malice.

If you consider all of that then and find that these elements have been proven, then you would not, of course, consider the murder of the third degree or involuntary manslaughter[, but that was not your question, right? Your question wasn't [whether] you had to go down and consider the other two.]

[The Foreperson:  No, that's correct.]

The trial court asked counsel to come forward for a sidebar discussion. The discussion was off-the-record and the transcript does not reflect any objections by defense counsel on the above portion of the instruction. After going back on the record, the jury foreman asked for further clarification and re-posed the question, asking "[t]he question is must you have one in order to have the other? In other words, if it's no on one, does that necessitate no on the other, cart before the horse[?]" N.T. at 614. To this inquiry, the court responded:

> I think I understand. My instructions were – let me – you should always go down the line. I think you're not bound to do that. Sometimes people skip over. It makes more logical sense to consider them one after another. Especially when you consider Count 1, clearly you can't find him guilty of more than one of the individual possibilities in Count 1.
>
> As to beyond that, however, and/or within that ambient, you're obligated as jurors to consider each of the charges that have been presented to you for consideration. It's your determination as to whether or not the [C]ommonwealth's evidence has proven all of the elements beyond a reasonable doubt and if you so find guilt as to that, if they have met that burden as to that particular crime you then consider, you find him guilty. I don't know what else to say to that.

N.T. at 614-15.

The jury was then sent out to continue deliberating. Appellant's counsel did not object on the record to the instruction or seek any additional or supplemental instruction before the jury retired. N.T. at 615. In chambers, after the jury had been sent out and after the court received notice that the jury had reached a verdict, defense counsel offered the following:

> May it please the Court, following our meeting in chambers, Your Honor, I just wanted to place on the record that I had requested an additional instruction be

> given to the jurors again indicating that they are not held
> to the second degree murder charge only; that they still
> have the third and manslaughter degree options open.
> You informed that that you felt that – the jurors were
> advised of that and you declined any request to
> reinstruct them. I just wanted to put that on the record.

N.T. at 615. The trial court immediately rejected what it termed
counsel's "motion to reinstruct" because it was presented after
the jury returned to its deliberations and reached a verdict. The
court, therefore, found the request/objection untimely. N.T. at
615-16.

**Mosley**, No. 517 MDA 2011, at 3-6.

Based on these facts, this Court agreed with the trial court that
counsel's objection to the supplemental instruction was untimely
and, thus, we concluded that Appellant had waived any objection
to that instruction on appeal. **Id**. at 6-7 (citing Pa.R.Crim.P.
647(B) ("No portions of the charge nor omissions from the charge
may be assigned error, unless specific objections are made
thereto before the jury retires to deliberate."); **Commonwealth v.
Dorm**, 971 A.2d 1284, 1287-88 (Pa. Super. 2009) ("[T]he failure
to lodge an objection to jury instructions before the jury
deliberates waives the objection.")).

Thereafter, Appellant filed the instant PCRA petition, contending
that counsel's failure to object to the at-issue jury instruction
constituted ineffective representation. In rejecting that claim, the
PCRA court offered the following explanation:

> This [c]ourt correctly charged the jury on all of the
> relevant offenses, including second and third degree
> murder, involuntary manslaughter and robbery; and, in
> response to a question raised by the foreperson,
> reinstructed the jury regarding the elements of second
> degree murder and advising it to begin at the top of the
> verdict slip and work its way down therefrom.
> Accordingly, we find that [Appellant] did not suffer
> prejudice as a result of [defense counsel's] actions or

inactions and, therefore, she cannot be deemed to have been ineffective.

PCRA Court Order, 5/2/13 (footnote omitted).

Now, on appeal, Appellant avers that the PCRA court erred in finding that defense counsel's representation was adequate. Before delving into the merits of his argument, we note that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited  to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Additionally, where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentenced resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that:  (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

**Commonwealth v. Johnson**, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

It is clear from the record and this Court's decision on direct appeal that defense counsel attempted to object to the court's supplemental instruction, yet failed to do so in a timely manner, thus waiving any challenge to the instruction on appeal. Based on these facts, we conclude that Appellant has proven the first two prongs of the ineffectiveness test.

For Appellant to prove the third prong, i.e., that he was prejudiced by counsel's conduct, he must demonstrate "that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been difference.'" **Commonwealth v. Steele**, 961 A.2d 786, 812-13 (Pa. 2008) (quoting **Commonwealth v. Cox**, 863 A.2d 536, 546 (Pa. 2004)). To that end, Appellant argues that the jury's question indicates confusion as to whether it was *bound* to consider only the offense of second-degree murder if it found Appellant guilty of robbery. In other words, the jury requested clarification as to whether it could find Appellant guilty of robbery and one of the lesser degrees of homicide (third-degree murder or involuntary manslaughter). Appellant maintains that the court's supplemental instruction did not clearly answer this question and, had counsel lodged a timely objection, the court "would have issued a clarifying instruction." Appellant's Brief at 18. He avers that a clarifying instruction would have resulted in a different verdict – namely, a conviction of one of the lesser degrees of homicide. **Id**. at 19.

We disagree with Appellant that the court's instruction was inadequate. "[W]hen reviewing jury instructions for error, the charge must be read as a whole to determine whether it was fair or prejudicial." **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1141 (Pa. 2012). Moreover,

> [a] trial court has broad discretion in phrasing its instructions and may choose its own wording as long as the law is clearly, adequately, and accurately presented to the jurors. There is error only when the trial court

inaccurately states the law or otherwise abuses its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

**Commonwealth v. Scott**, 73 A.3d 599, 607 (Pa. Super. 2013) (citing **Commonwealth v. Hoover**, 16 A.3d 1148, 1150) (Pa. Super. 2011)).

Here, reviewing the charge as a whole, we ascertain no error in the court's delivery of the relevant legal principles to the jury. In its initial instruction, the court informed the jury of the elements of each degree of homicide. N.T. Trial, 1/31/11-2/3/11, at 576-584. The court then explained:

As to criminal homicide, I try to give a little memory kick here. Each one listed, murder of the second degree, with the word ["]or,["] murder of the third degree or involuntary manslaughter.

The ["]or["] is intended to really say if not guilty as to the one above, then you consider the next. If not guilty you go to the next. But under the homicide considerations – but if you find guilty as to one, then you **need not** consider as to the one below it; then followed by robbery, criminal conspiracy to commit robbery, and the fourth count, person not to possess a firearm.

**Id**. at 599 (emphasis added).

The court's use of the phrase "need not," rather than "must not" or "cannot," indicated to the jury that it was not bound to convict Appellant of second-degree murder, even if it concluded that the victim's death occurred during Appellant's commission of a robbery. After the jury posed its question to the court, the court properly reiterated the elements of second-degree murder, and informed the jury that it *should* "go down the line" in terms of assessing the varying degrees of homicide. **Id**. at 614. However,

the court also clarified that the jury was "not *bound* to do that," and stated that the jury could "skip over" certain charges. **Id**.

We conclude that the court's instruction, as a whole, "clearly, adequately, and accurately presented [the law] to the jurors." **Scott**, 73 A.3d at 607. In particular, the court's supplemental instruction sufficiently answered the jury's question, indicating to the jurors that they were not precluded from evaluating the offenses of third-degree murder and/or involuntary manslaughter. Accordingly, Appellant has failed to demonstrate that he was prejudiced by defense counsel's failure to timely object to the court's supplemental instruction. Thus, the PCRA court did not err in rejecting Appellant's ineffectiveness claim and dismissing the petition.

(Doc. 15-2, <u>Commonwealth of Pennsylvania v. Mosley</u>, No. 901 MDA 2013, unpublished memorandum at 3-9 (Pa. Super. filed Jan. 16, 2014).

With respect to Petitioner's claim that he was prejudiced by defense counsel's failure to timely, repeatedly and adequately object to the Court's response to the jury's question and to its supplemental instruction/reinstruction, the Superior Court affirmed the PCRA court's determination that trial counsel was not ineffective. This determination was not contrary to, or an unreasonable application of <u>Strickland</u>.

The Due Process Clause of the Fourteenth Amendment requires the government to prove each element of an offense beyond a reasonable doubt. <u>In re Winship</u>, 397 U.S. 358, 364 (1970). "This bedrock, 'axiomatic and elementary' principle" prohibits a jury instruction that lessens the prosecution's burden of proof. <u>Francis v. Franklin</u>, 471 U.S. 307, 313 (1985)

18

(quoting In re Winship, 397 U.S. at 363). If the instruction contains "some 'ambiguity, inconsistency, or deficiency,' " such that it creates a "reasonable likelihood" the jury misapplied the law and relieved the government of its burden of proving each element beyond a reasonable doubt, the resulting criminal conviction violates the defendant's Constitutional right to due process. Bennett v. Superintendent Graterford SCI, 886 F.3d 268, 285 (3d Cir. 2018) (citing Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (internal citations omitted)).

When a habeas petitioner claims the jury instruction was unconstitutional, "we have an independent duty to ascertain how a reasonable jury would have interpreted the instructions at issue." Smith v. Horn, 120 F.3d 400, 413 (3d Cir. 1997) (citing Francis, 471 U.S. at 315-16). We exercise this duty by "focus[ing] initially on the specific language challenged," Francis, 471 U.S. at 315, and then considering the "allegedly constitutionally infirm language ... in the context of the charge as a whole" to determine whether there is a reasonable likelihood the jury applied the instructions in a manner violative of the accused's due process rights. Smith, 120 F.3d at 411.

The record reveals that the trial court's instructions to the jury on the elements of second, and third degree, murder, and how to deliberate on the degrees of murder, was as follows:

> The first count charges the Defendant with taking the life of Qahill Jefferson and charged it as criminal homicide. Criminal homicide is the kind of umbrella charge that includes other charges in this case. It includes murder of the second degree, murder of the third degree or involuntary manslaughter, and that's in descending order of seriousness.
>
> During my -- one part of my discussion with counsel this morning, the Commonwealth determined it would not seek first degree murder. So that would normally be in the criminal homicide general charge.
>
> So we're down just to the three I mentioned. So you can have six possible verdicts of guilty or not guilty of these three, murder of the second degree, third degree murder and involuntary manslaughter.
>
> Let me tell you a little bit about malice. Malice is an element of murder but not of manslaughter. A person who kills... must have acted with malice in order to be found guilty of any degree of murder. That term malice has a special legal meaning. It doesn't mean simply hatred or spite or ill will.
>
> It's a shorthand way of referring to the mental state applicable to each of the various degrees of murder charge and it differs with respect to each.
>
> I'll skip that which would be necessary for first degree, but for murder of the second degree, which we ofttimes refer to as felony murder, it's a killing with malice if the perpetrator engages in one of certain enumerated felonies and killing occurs. Since the law through this felony murder rule allows the finder of facts, that's

20

you, to infer that the killing was with malice from the fact that the actor engaged in a felony of such danger to human life that a reasonable person knew or should have known that death might result in the commission of a felony.

For third degree murder, a killing is with malice if the perpetrator's actions show his or her wanton, willful disregard of an unjustified and extremely high risk that his or her conduct would result in death or serious bodily injury to another person.

Now, note that I already said when I mentioned this... that it's his or her conduct or the conduct of an accomplice or coconspirator. The Commonwealth is not required to prove that the perpetrator specifically intended to kill another person under third degree murder. It must prove, however, that he took action while conscientiously, that is, knowingly knew he was disregarding the most serious risk that he or she was creating and that by his disregard of that risk, he demonstrated his extreme indifference to the value of human life.

Now, dealing back again with each of these, the Defendant, as I said --now you're going to be considering within the homicide charge --he's been charged then with the most serious of them, second degree murder, felony murder.
To find Defendant guilty of that offense, you must find these three elements have been proven beyond a reasonable doubt:

First, that Defendant or an accomplice or coconspirator in the commission of a felony, the object crime, caused the death of Qahill Jefferson.

Secondly, that Defendant did so while committing or attempting to commit a robbery as was discussed in this case; and, third, that Defendant was acting with malice.

I'll be defining robbery for you momentarily. Now, again some of this is repetitious but I need to cover it because one of the concepts that I talked about is the liability of Defendant for acts of third persons. When two or more persons are partners in a successful or unsuccessful attempt to commit a felony and one

of them kills a third person, then both parties, both partners may be guilty of felony murder.

Neither of the partners has to intend to kill nor even anticipate that anyone would be killed. The person killed doesn't necessarily even have to be the person who was to be the victim of the underlying crime they were trying to commit.

To find Defendant guilty as charged in this case of second degree murder, you must find that the following four elements have been proven beyond a reasonable doubt:

First, that the Defendant or his partner killed Qahill Jefferson or caused his death.

Second, that the Defendant or his partner committed the killing while he and the partners were attempting to or in the process of committing a robbery.

Third, that the Defendant his partner did the act that killed or caused the death of Qahill Jefferson in furtherance of the attempt or the commission of the robbery; and fourth, that the Defendant or his partner was acting with malice.

(Doc. 15-3 at 146-148, N.T. at 575-80).

After the trial court properly explained all the elements of second-degree murder, the court went on to define the elements of third-degree murder as follows:

The lesser degree of murder that is for your consideration should you find the Defendant not guilty of second degree murder, then you should consider and move on to consider third degree.

Third degree murder is any killing with malice -- sort of circular reasoning sometimes -- the law has defined as any murder that isn't first or second degree. To find the Defendant guilty of third degree murder, you must find that the Commonwealth has

22

proven beyond a reasonable doubt, first, that Qahill Jefferson is dead; not in dispute.

Secondly, that the Defendant killed him or her or, as I said, his partner, coconspirator or accomplice and, third, that the Defendant or the partner killed Qahill Jefferson with malice.

As I said, malice does not simply mean hatred or spite or ill will. Malice in third degree is a killing with malice in a third degree killing if the perpetrator's actions showed a wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another.

In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another person. The Commonwealth must prove, however, beyond a reasonable doubt that the perpetrator took action while conscientiously and knowingly disregarding the most serious risk that he was creating and that by this disregard of that risk the perpetrator demonstrated his extreme indifference to the value of human life.

(Doc. 15-3 at 148, N.T. 580-81). Pennsylvania's Suggested Standard Criminal Jury Instructions contain a virtually identical instruction regarding second, and third, degree murder. See Pa. SSJI (Crim), §15.2501A(2005).

When asked by the jury foreperson for clarification on the instructions on second, and third, degree homicide, and how it should deliberate on the degree of murder, based upon finding Petitioner guilty of robbery, the trial court correctly reiterated its instruction that the jury should start with the more serious offense, second-degree murder, and work their way to the less serious offenses, if the elements for second-degree murder were not met.

The court's instruction merely reiterated that which had already been given to the jury.

While Petitioner's trial counsel could have raised an objection prior to the jury being excused to conduct its deliberations, the attorney indicated on the record that she would have raised an objection to the instruction given and instead instruct the jury that it was not held to the second degree murder charge only and that the jury still had the third degree murder charge and manslaughter charge in which the jury could have convicted Petitioner. However, the trial court's response to the jury's inquiry demonstrates that the trial court did not limit the jury's deliberation of the degree of murder to second degree. It is clear from the transcript of the exchange between the trial court and the jury foreperson, that the jury was properly instructed on how to deliberate on the degrees of murder. The trial court clearly instructed the jury to consider each of the degrees of murder and to consider whether the evidence presented by the Commonwealth satisfied the elements of the varying degrees of murder. Because the trial court properly instructed and reinstructed the jury before it left to deliberate, the attorney's failure to object to the trial court's instruction did not prejudice Petitioner, as the instruction, as a whole, clearly conformed to the Pennsylvania Suggested Jury Instructions on homicide, and the reinstruction did not limit them to only

second-degree murder. Accordingly, the state court's determination that Petitioner's underlying claim lacked arguable merit, and that he failed to demonstrate that he was prejudiced by defense counsel's failure to timely object to the court's supplemental instruction, is not contrary to, or an unreasonable application of Strickland.

## V.    Certificate of Appealability

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Mosley from appealing the order denying his petition so long as he seeks, and obtains, a

certificate of appealability from the Third Circuit Court of Appeals.  See FED. R. APP. P. 22(b)(1).

## VI.    **Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 10, 2020**

15-0334-01